1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   TANYA C.[1],                          Case No.: 22-CV-653-SBC

12                          Plaintiff,
                                          **ORDER ON PLAINTIFF'S MOTION**
13   v.                                    **FOR SUMMARY JUDGMENT AND**
                                          **DEFENDANT'S CROSS-MOTION**
14   KILOLO KIJAKAZI,                      **FOR SUMMARY JUDGMENT**
     Acting Commissioner of Social Security,
15                                         **[ECF No. 9]**
16
17                         Defendant.

18        This Action arises from the Commissioner of Social Security's ("Commissioner" or

19   "Defendant") denial of Tanya C.'s ("Plaintiff") application for disability insurance benefits

20   under Title II of the Social Security Act ("Act"). On October 14, 2022, Plaintiff submitted

21   a Motion for Summary Judgment, seeking review of the Commissioner's final decision

22   denying Social Security benefits and requesting a remand for further administrative

23   proceedings. (Doc. No. 9). On November 18, 2022, Defendant filed a Cross-Motion for

24

25   _____

26   [1]  Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security

27   cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only

28   their first name and last initial." Civ. L.R. 7.1(e)(6)(b).

Summary Judgment. (Doc. No. 11). The issue presented is whether the Administrative Law Judge ("ALJ") erred in assessing the medical opinion of Stephen A. Genet, M.D. Having reviewed and considered the Parties' submissions and the entirety of the administrative record ("AR"), the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

## I.   PROCEDURAL HISTORY

On November 1, 2011, Plaintiff filed an application for disability insurance benefits, asserting disability resulting from a stroke and brain hemorrhage with a disability onset date of February 10, 2011. (AR 98, 124.) Plaintiff alleges her disabilities include depression, panic attacks, and agoraphobia, which stem from the stroke and brain hemorrhage she previously suffered. (AR 147.) On April 18, 2012, the Commissioner denied Plaintiff's initial application for disability insurance benefits. (AR 124.) On December 17, 2012, the Commissioner denied Plaintiff's request for reconsideration of its initial denial. (*Id.*) On January 16, 2013, Plaintiff filed a written request for a hearing on her disability insurance benefits application, which the Commissioner granted. (*Id.*). ALJ James Carletti ("ALJ Carletti") was appointed to Plaintiff's administrative case and presided over the hearing on February 28, 2014. (AR 94-119.) ALJ Carletti heard testimony from Plaintiff, Nathan R. Strahl, M.D., Ph.D., an impartial medical expert ("Dr. Strahl"), and Alan E. Cummings, a neutral vocational expert ("VE Cummings"). (*Id.*) On March 27, 2014, ALJ Carletti issued his Notice of Decision ("Decision") and determined that Plaintiff was disabled within the meaning of the Social Security Act due to the combined residual effects from her stroke. (AR 140.) However, ALJ Carletti opined that Plaintiff was only disabled for a short term between February 10, 2011, and June 1, 2012. (*Id.*)

On April 3, 2019, Plaintiff filed a subsequent Title II application for disability insurance benefits, claiming disability beginning on June 28, 2019. (AR 24.) On June 28, 2019, the Commissioner denied Plaintiff's initial application (AR 185.) On August 30, 2019, the Commissioner denied Plaintiff's request for reconsideration. (AR 190-91.) On September 7, 2019, Plaintiff submitted a written request for an administrative hearing. (AR

197.) On October 1, 2020, a telephonic hearing was held. (AR 216.) ALJ Andrew Verne ("ALJ Verne") heard testimony from Plaintiff and Erin M. Welsh, an impartial vocational expert ("VE Welsh"). (AR 63-91.)

On February 2, 2021, ALJ Verne presided over a supplemental telephonic hearing. (AR 279.) ALJ Verne heard testimony from Dr. Genet, a neurosurgeon and an impartial medical expert, ("Dr. Genet") and Kimberly S. Mullinax, an impartial vocational expert ("VE Mullinax"). (AR 47-62.) On March 22, 2021, ALJ Verne issued his Notice of Decision ("Decision"), concluding Plaintiff was not disabled within the meaning of the Social Security Act and denying an award of disability insurance benefits. (AR 40.) On May 13, 2021, Plaintiff petitioned the Appeals Council to review ALJ Verne's Decision. (AR 302.) On September 9, 2022, the Appeals Council denied Plaintiff's request for review. (AR 1-4.) In doing so, the Appeals Council adopted ALJ Verne's Decision as the final decision of the Commissioner. *See* 42 U.S.C. § 405(h). (*Id*.) On October 14, 2022, having exhausted all administrative remedies, Plaintiff timely brought this Action, seeking judicial review pursuant to Title 42 U.S.C. section 405(g). (*See* ECF No. 1.)

## II.    FACTUAL BACKGROUND

### a.  Dr. Genet's Medical Opinion

On February 2, 2021, Dr. Genet provided an impartial opinion regarding the Plaintiff's case. (AR 47-62.) Dr. Genet is a board-certified neurosurgeon trained in neurology who uses neuropsychic techniques to diagnose mental health issues in clients. (AR 1097-1098.) Importantly, Dr. Genet is not a psychologist or psychiatrist. (AR 53.) Dr. Genet examined Plaintiff's medical records and identified Plaintiff's severe impairments based on the following information in the administrative record.[2] Specifically, Dr. Genet

---

[2] Since 2011, Plaintiff has undergone medical examinations and received treatment from many doctors. However, the issues in this case pertain only to Dr. Genet's medical opinion. Therefore, the Court will limit its discussion to Dr. Genet's medical opinion for purposes of this Order.

opined that six of Plaintiff's severe impairments constituted a medical listing under 20 C.F.R. Section 404, Subpart P, App. 1, 11.04: (1) brain hemorrhage, (2) depressive and anxiety disorder, (3) monoplegia of the right arm, (4) knee bursitis, (5) encephalomalacia of the left frontal lobe, and (6) expressive aphasia. (AR 55-56.)

Dr. Genet explained that Plaintiff's six severe impairments, when combined, were equivalent to the weakness of two extremities, and Plaintiff's condition had persisted from the time of her stroke to the date of the administrative hearing. (*Id.*) Dr. Genet stated that Plaintiff's hemorrhage or "softening of the brain" led to both depressive and anxiety disorders. (*Id.*) Dr. Genet further stated that these two impairments, combined with Plaintiff's monoplegia of her right arm and knee bursitis, would equal the weakness of two extremities that "do not work as well as they should have." (*Id.*) Dr. Genet added that the encephalomalacia of Plaintiff's left frontal lobe and expressive aphasia contributed to the medical listing. (*Id.*) When ALJ Verne asked Dr. Genet to provide "any further comments" beyond Dr. Genet's reference to Plaintiff's various diagnoses, Dr. Genet answered "No, I don't believe so." (AR 60.) To that end, ALJ Verne followed up regarding Plaintiff's prognosis. (*Id.*) Dr. Genet opined that "If things like aphasia and the monoplegia of the arm are present this long after the stroke, I think it can be considered permanent." (*Id.*) Dr. Genet did not further elaborate.

### b.  ALJ Verne's Decision

In rendering his Decision, ALJ Verne followed the Commissioner's five-step sequential evaluation process governing disability insurance benefits applications. *See* 20 C.F.R. § 404.1520. At step one, ALJ Verne found that Plaintiff had not engaged in any substantial gainful activity since June 18, 2018, Plaintiff's alleged disability onset date. (AR 28.) Prior to the onset of her alleged disability, Plaintiff worked full-time as a drug and alcohol detox counselor. (AR 27.) At step two, ALJ Verne determined that Plaintiff suffered from the following severe impairments:

/ / /

/ / /

"[S]tatus post brain hemorrhage/cerebrovascular accident with residual including mild right hemiparesis, expressive aphasia, hypertension, non-epileptic seizure-like activity, depression otherwise not specified, anxiety, right hip pain, nicotine dependence, inactive anorexia, cognitive disorder not otherwise specified, panic with agoraphobia, opioid dependence, and alcohol abuse."

(AR 28 [citing 20 CFR 404.1520(c)].)

ALJ Verne also found that Plaintiff had non-severe impairments of left knee bursitis and obesity. (*Id.*) As to her left knee bursitis, ALJ Verne determined that Plaintiff's condition was non-severe because it only caused "[a] slight abnormality that would have no more than a minimal effect on her ability to work… [and] this condition was being managed medically and should be amenable to proper control by adherence to recommended medical management and medication compliance." (AR 28.) Additionally, ALJ Verne determined Plaintiff's obesity was non-severe after evaluating all potential functional limitations and symptoms impacting Plaintiff's physical and mental ability to perform basic work activities. (*Id.*)

At step three, ALJ Verne found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Commissioner's listing of impairments. (AR 29.) As to Plaintiff's mental impairments, ALJ Verne noted only moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) and adapting or managing oneself. (*Id.*) ALJ Verne added that the objective medical evidence showed Plaintiff could exercise, take care of her personal hygiene, and perform other activities of daily living without issue. (*Id.*) Lastly, ALJ Verne noted that Plaintiff's mental status examinations taken by numerous mental healthcare providers showed minimal cognitive deficit and that, as of November 12, 2020, she "could do serial 7 [mental assessments] accurately and interpret proverbs." (*Id.*) In finding that Plaintiff did not meet the criteria of a listed impairment, ALJ Verne next

determined Plaintiff's residual functional capacity ("RFC"), constituting Plaintiff's ability to do physical and mental work activities despite her purported impairments. (AR 30.)

At step four, ALJ Verne calculated Plaintiff's RFC to assess whether she was able to perform any past relevant work. (AR 39.) At step five, ALJ Verne's evaluation examined Plaintiff's capacity to engage in other work by considering factors such as Plaintiff's RFC, age, education, and work experience. (AR 39-40.) ALJ Verne ultimately determined that Plaintiff could not perform her past relevant work; however, Plaintiff's age, education, work experience, and RFC demonstrated that Plaintiff was still capable of performing certain jobs that existed in the national economy. (AR 39.) In so opining, ALJ Verne accepted the testimony of VE Mullinax, who found that Plaintiff could perform three jobs from the Dictionary of Occupational Titles ("DOT"), namely Mail Clerk (DOT 209.687-026), Routing Clerk (DOT 222.687-022), and Merchandise Maker (DOT 209-587-034). (AR 40.)

In reaching his determination of non-disability, ALJ Verne found Plaintiff possessed the RFC to perform light work as defined in 20 C.F.R. section 404.1567(c), with the following limitations:

> [U]nderstanding, remembering, and carrying out simple, routine, repetitive tasks, with breaks every two hours, to no interaction with the general public, and to occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product. She cannot perform highly time-pressured tasks such that the claimant is limited to generally goal-oriented work, not time sensitive strict production quotas (that is, production rate pace work with strict by the minute or by the hour production quotas that are frequently and/or constantly monitored by supervisors or that are fast paced) in low-stress environment[s' where there are few workplace changes (*i.e.*, the claimant would not have to switch from task to task) and the claimant has minimal decision-making capability.

(AR 30.)

/ / /

/ / /

In calculating Plaintiff's RFC, ALJ Verne considered "[A]ll symptoms and the extent to which these symptoms c[ould] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (AR 31.) ALJ Verne also considered the medical opinions and administrative findings in the administrative record. (*Id.*) Based upon those materials and testimony from Plaintiff's administrative hearing, ALJ Verne concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 18, 2018, through the date of his Decision. (AR 41.)

## III.   LEGAL STANDARD

Section 405(g) of the Social Security Act ("Section 405(g)") permits a claimant who has received an adverse final decision from the Commissioner to appeal such decision through judicial review. 42 U.S.C. § 405(g).  The ALJ's decision denying the disability insurance benefits should only be reversed if that decision is not supported by substantial evidence or it is based upon harmful legal error. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "If the evidence can reasonably support either affirming or reversing a decision, the court may not substitute its judgment for that of the Commissioner." *Id*. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A reviewing court must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 2014). If the record would support more than one rational conclusion, the reviewing court must defer to the ALJ's decision. *Andrews*, 53 F.3d at 1039-40; *see also Mayes v. Massanari*, 276 F.3d 453, 456 (9th Cir. 2001).

/ / /

/ / /

## IV.   DISCUSSION

The sole issue before the Court is whether ALJ Verne's Decision is supported by substantial evidence specifically as to when ALJ Verne rejected Dr. Genet's medical opinion for its lack of credibility. Plaintiff argues ALJ Verne made a harmful error when he purportedly failed to provide clear and convincing reasons for his assessment of Dr. Genet's medical opinion. The Commissioner wholly disputes Plaintiff's position. Having reviewed the Parties' moving papers and the entirety of the administrative record, the Court agrees with the Commissioner and explains below.

The Ninth Circuit has established that an ALJ's decision to discredit a medical opinion must "simply be supported by substantial evidence."[3] *See Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Consequently, the ALJ is no longer obligated to assign specific evidentiary weight, even controlling weight, to any medical opinions, inclusive of a treating physician's opinion. 20 C.F.R. § 404.1520c. Rather, the ALJ is required to analyze the "persuasiveness" of each medical opinion, under a five-factor framework,[4] with the most critical factors being supportability and consistency. *Id*. §§ 404.1520c(b)(2), (c)(1)-(5).  Supportability refers to the degree to which a medical opinion is bolstered by "relevant objective medical evidence" and "supporting explanations from other medical sources." *Id*. § 404.1520c(c)(1). Consistency refers to how closely a medical opinion aligns with "other medical sources and non-medical sources" in the claim. *Id*. § 404.1520c(c)(2).

/ / /

---

[3] *Woods* superseded prior legal authority, which required the ALJ to provide varying levels of reasoning when evaluating medical opinions according to the hierarchy of medical opinions. *Woods*, 32 F.4th at 787. However, post-*Woods*, all claims filed on or after March 17, 2017, must now undergo an analysis based on the Commissioner's revised regulations, which do not assign special weight to a medical opinion merely based upon a medical expert's relationship to a claimant. *Id.*

[4] Along with supportability and consistency, an ALJ should also consider "the doctor's relationship with claimant," the "specialization of the medical source," and any other factors that will support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(3)-(5).

Due to the significance of these two factors, the ALJ must provide an explanation of how they assessed the supportability and consistency of the medical opinions that inform their decision. § 404.1520c(b)(2). *See also Gerardo v. Kijakazi*, 2023 U.S. Dist. LEXIS 90032, at \*26-27 (S.D. Cal. Mar. 20, 2023) (emphasizing that despite the ALJ's analysis of a medical opinion being "brief," supportability and consistency were properly considered under the new framework); *Kitchen v. Kijakazi,* 82 F.4th 732, 740 (9th Cir. 2023) (upholding the ALJ's discounting of a medical opinion because the doctor's assessment of severe limitations was inconsistent and unsupported by the medical record); *Woods*, 32 F.4th at 783 (affirming the ALJ's rejection of a medical opinion based on inconsistency with the overall treatment notes and mental status exams in the record). The Court applies the two factors to ALJ Verne's assessment of Dr. Genet's opinion, beginning with the supportability factor.

## 1. **Supportability**

Plaintiff argues that ALJ Verne committed harmful error when he found Dr. Genet's medical opinion to be unpersuasive. In his Decision, ALJ Verne explained he discounted Dr. Genet's opinion due to a lack of supporting objective medical evidence and inconsistencies with evidence from both medical and non-medical sources. (AR 37.) In particular, ALJ Verne stated in his Decision:

> [Dr. Genet's] opinion [wa]s not supported by relevant objective medical evidence, inconsistent with evidence from other medical and nonmedical sources, and contradicted by other factors . . . First, a supportable explanation was not provided because there were insufficient references to medically acceptable objective clinical or diagnostic findings. Second, the objective medical evidence, including conservative and standard diagnostic and clinical findings, d[id] not support the assessments. Indeed, as detailed above, the claimant's neurological examinations were generally normal or showed only mild findings. Third, the medical opinion [wa]s inconsistent with the claimant's admitted activities of daily living, which ha[d] already been described above in this decision. Performance of this wide range of ordinary tasks is inconsistent with severe limitations and casts doubts on this opinion.

(AR 37.)

Regarding Plaintiff's physical impairments, ALJ Verne observed that Plaintiff's "neurological examinations were generally normal or showed only mild findings," including a November 11, 2019, MRI, which showed "no acute abnormalities, no significant interval change, shows encephalomalacia, *etc.*" and "no significant change." (AR 57-58, 756.) In his Decision, ALJ Verne elaborated that, with regard to Plaintiff's physical impairments, including those stemming from her past brain hemorrhage, the evidence indicated normal sensory and motor function, an absence of focal deficits, and typical coordination in neurological examinations. (AR 1077, 1087.) Further, ALJ Verne noted that, on October 31, 2019, a neurologist concluded Plaintiff had "fully recovered from her 2011 aneurysm," despite mild expressive aphasia and some lingering difficulty with word-finding. (AR 1088.) Additionally, ALJ Verne pointed out that examination results in December 2019 showed no abnormalities in Plaintiff's brain stem and cerebellum. (AR 1086.) Further, August 7, 2020, examination results of Plaintiff's left knee showed no left joint effusion, no acute fracture or dislocation, and mild lateral patellofemoral compartment arthritis bilaterally showed no injury. (AR 754.) On August 10, 2020, at a follow-up exam, Plaintiff's treating physician, Dr. Belen Clark, M.D., ("Dr. Clark") noted that Plaintiff had left knee bursitis. (AR 746.) In doing so, Dr. Clark categorized Plaintiff's expressive aphasia as "not chronic." (AR 762.) Based on such records, ALJ Verne found Plaintiff's impairments did not constitute severe impairments, which was the basis for his decision to discount Dr. Genet's medical opinion.

To that end, Dr. Genet's medical opinion was not anchored in evidentiary citations that explained his respective conclusions that Plaintiff presented with severe impairments and such impairments equated to a Social Security listing. Instead, Dr. Genet cited to Plaintiff's medical records to confirm Plaintiff's various diagnoses and, from there, offered his conclusion regarding what Social Security listing would apply to Plaintiff's case in light of her various medical conditions. At the administrative hearing, ALJ Verne raised the matter of Plaintiff's left knee bursitis with Dr. Genet and noted that Plaintiff's examination results showed "no injury" and were generally "unremarkable." (AR 56-7, 751-54.)

Plaintiff argues that Dr. Genet misunderstood ALJ Verne during this portion of the administrative hearing and, for such reason, Dr. Genet did not offer evidence to counter ALJ Verne's record citations. Assuming Plaintiff's contention is true, the Court finds that substantial evidence nonetheless underlies ALJ Verne's Decision in light of his objective evidentiary citations establishing Plaintiff's left knee bursitis was "non-severe" and that no aggressive treatment was recommended. *Jensen v. Colvin*, 2016 WL 4501075, at *6 (S.D. Cal. Aug. 29, 2016) (affirming ALJ's finding of partial credibility and determination of non-disability where the ALJ cited objective medical records establishing that "Plaintiff was treated conservatively"). (AR 28, 771–90.)

Regarding her mental impairments, Plaintiff argues that ALJ Verne's assessment of her fatigue, depression, and anxiety was inadequate because he discussed a combination of positive and negative findings concerning these impairments. (AR 57-58.) Plaintiff contends that Dr. Genet's reliance on Plaintiff's diagnoses and references to evidence of her right arm monoplegia demonstrates that Dr. Genet's medical opinion was properly supported. The Court does not adopt Plaintiff's conclusion, particularly because ALJ Verne was responsible for considering the totality of the administrative record, rather than only selected portions of the record. To that end, ALJ Verne cited Plaintiff's mental status examinations that largely revealed "normal" results, while concurrently crediting Plaintiff with her diagnoses of major depressive disorder, anxiety disorder, and panic disorder with agoraphobia. (AR 58, 610-716, 741.)

In contrast, Dr. Genet's opinion did not cite to specific objective records in support of his conclusion regarding what Social Security listing may apply to Plaintiff's alleged mental impairments. Further, ALJ Verne explained that, despite Plaintiff's complaints of fatigue and anxiety, her impairments were categorized as "amenable to treatment," and her psychological and psychiatric assessments generally revealed mild changes. (AR 613-14, 618-19, 623-24, 633, 650, 656.) Additionally, ALJ Verne emphasized that, on December 10, 2018, Plaintiff's psychiatrist noted Plaintiff was "well managed on current medication," and that on May 21, 2019, she responded "well to therapeutic tools." (AR 655, 614.) Lastly,

by April 14, 2020, it was noted Plaintiff was able to minimize stress and "was doing well." (AR 992.)

Taken together, ALJ Verne's specific citations to objective medical records that contradicted Dr. Genet's medical opinion constitute substantial evidence to support ALJ Verne's ultimate determination of non-disability. Consistent with this conclusion, the Court finds substantial evidence underlies ALJ Verne's decision to discount Dr. Genet's medical opinion accordingly. *See Ford v. Saul*, 950 F.3d 1141, 1154-55 (9th Cir. 2020) (explaining that an ALJ may reject a medical opinion based on inconsistencies in the objective record); *Woods*, 32 F.4th at 792 (noting that an ALJ does not need to provide "specific and legitimate" reasons for rejecting a treating or examining doctor's opinion, but instead can properly reject medical opinions by providing "an explanation supported by substantial evidence"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (emphasizing that the ALJ is the "final arbiter with respect to resolving ambiguities in the medical evidence" and can properly discount medical opinions by citing to inconsistencies within the record.). Given the above, the Court holds that ALJ Verne properly assessed Dr. Genet's medical opinion when he "[set] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[ed] his interpretation thereof, and ma[de] findings" accordingly. *Reddick*, 157 F.3d at 725. In turn, the Court finds that ALJ Verne adequately discussed the supportability factor in his Decision and appropriately concluded that Dr. Genet's medical opinion lacked supportability. The Court next addresses the consistency factor underlying ALJ Verne's assessment of Dr. Genet's medical opinion.

## 2. **Consistency**

The Court next addresses whether ALJ Verne erred when he found Dr. Genet's medical opinion inconsistent with the record in Plaintiff's administrative case. Plaintiff asserts that ALJ Verne erred in basing his rejection of Dr. Genet's testimony on Plaintiff's daily activities. (AR 34.) To support her position, Plaintiff cites to a Social Security Regulation indicating that the Commissioner does not "generally consider activities or hobbies to be indicative of the ability to work on a regular and continuous

basis." 20 C.F.R. § 404.1572(c). By doing so, Plaintiff suggests that her daily life activities are not relevant to the matter before the Court. From there, Plaintiff concludes that her testimony regarding the symptoms of her impairments is consistent with Dr. Genet's testimony that, when combined, her impairments equal the criteria for a medical listing under 20 C.F.R. Part 404, Subpart P, Appendix 1.

The Commissioner counters that "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *James v. Charter* 112 F.3d 1064, 1067 (9th Cir. 1997). As a fundamental matter, Ninth Circuit authority supports the Commissioner's characterization of the issue here. *See generally Tidwell v. Apfel*, 161 F.3d 599 (9th Cir. 1998); *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007); *Andrews v. Shalala*, 53 F.3d 1035 (9th Cir. 1995). The Court's analysis herein conforms to such authority and examines whether substantial evidence underlies ALJ Verne's ultimate finding of non-disability, which encompasses the immediate issue of the consistency of Dr. Genet's medical opinion.

In evaluating the consistency between Dr. Genet's testimony and various medical and non-medical sources, ALJ Verne pointed to contradictions concerning Plaintiff's daily activities that Dr. Genet's medical opinion did not address. (AR 37.) In his Decision, ALJ Verne cited to his earlier reference to Plaintiff's Third-Party Function Report, stating "[Dr. Genet's] medical opinion is inconsistent with the claimant's admitted activities of daily living...." (AR 37.) The Third-Party Function Report revealed that Plaintiff maintained a range of daily life activities that undermined the reportedly severe restrictions Dr. Genet found, with ALJ Verne commenting "the performance of this wide range of ordinary tasks [wa]s inconsistent with severe limitations and casts doubt on [Dr. Genet's] opinion." (AR 38.) In his Decision, ALJ Verne specifically noted that Plaintiff was capable of driving herself, managing her personal finances including paying her bills, and regularly visiting her family members' homes as well as a yoga studio, none of which Dr. Genet acknowledged or accounted for in his medical opinion. (AR 38.) Further, Dr. Genet

generally referenced the Third Party Function Report in his medical opinion, but he did not specifically cite to it in support of his functional limitations assessment. (AR 54.)

"When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so . . . " *See,* e.g., *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022) (affirming ALJ's finding of non-disability where the medical records and opinions within the record contradicted plaintiff's testimony concerning her daily activities); *Kitchen v. Kijakazi*, 82 F.4th at 739 (highlighting that ALJ's denial of benefits was appropriate where the ALJ showed discrepancies between statements about the "[i]ntensity, persistence, and limiting effects" of plaintiff's symptoms and the mild to moderate findings found in the medical evidence); *Ford*, 950 F.3d at 1147 (upholding ALJ's denial of benefits based on a conflict between the treating physician's opinion and the claimant's activity level); *Klaas v. Kijakazi*, 2023 U.S. Dist. LEXIS 105608, at *27-28 (S.D. Cal. Jun. 16, 2023) (finding that contradictory medical opinions, inconsistent with plaintiff's daily activities constituted evidence that supported the ALJ's denial of benefits).  Such is the case here.

After considering the administrative record as a whole, ALJ Verne reasoned that Plaintiff's limitations were not as severe as Dr. Genet had characterized them. (*See* AR 28–37.) ALJ Verne appropriately refrained from relying solely on Plaintiff's daily life and recreational activities when making this determination, although, as noted, such activities contradicted the severe restrictions Dr. Genet attributed to Plaintiff's impairments. *See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (affirming ALJ's non-disability finding in light of inconsistencies between plaintiff's testimony and her daily life activities, which included caring for her personal needs, cooking, cleaning, and shopping, and explaining that "although the evidence of [plaintiff's] daily activities may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and '[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'") (citing *Magallanes*, 881 F.2d at 750.)

Instead, ALJ Verne emphasized the objective medical records that comprehensively addressed Plaintiff's physical and mental impairments, as set forth above. (*Id.*) ALJ Verne underscored how both Plaintiff's physical and mental impairments yielded nothing more than mild to moderate objective findings. (AR 37.) For example, ALJ Verne pointed out the medical notations showing Plaintiff had "minimal cognitive defect." (AR 937, 957-58, 966-67, 971-72, 976-77, 982-83, 987-88, 991-92, 997-98, 1014, 1018-19.) Consistent with this conclusion, ALJ Verne emphasized that Plaintiff was not subjected to any aggressive treatment for either her physical or mental impairments. *Stoval v. Kijakazi*, 2023 WL 8458749, at *9 (S.D. Cal. Dec. 5, 2023) (affirming ALJ's non-disability finding and noting that plaintiff's conservative treatment history provided a clear and convincing reason for discounting his subjective claims) (citing *Smartt*, 53 F.4th at 500 (finding conservative treatment as a basis for finding plaintiff's subjective symptom testimony inconsistent with objective medical evidence); *Nash v. Astrue*, 2012 WL 6700582, at *9 (C.D. Cal. Dec. 21, 2012) (declining to "second guess" the ALJ's characterization as "routine conservative treatment."). (*Id.*) In light of these circumstances, and a lack of objective evidentiary citations to undo ALJ Verne's assessment of Dr. Genet's opinion, the Court finds no valid grounds to disturb ALJ Verne's well-reasoned findings of inconsistency as to Dr. Genet's medical opinion.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment. The Clerk of this Court **SHALL ENTER** judgment in favor of Defendant and close this case accordingly.

**IT IS SO ORDERED.**

Dated: February 7, 2024

Hon. Steve B. Chu
United States Magistrate Judge

22-CV-653-SBC